AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☒ INFORMATION  ☐ INDICTMENT  ☐ SUPERSEDING

---

### OFFENSE CHARGED

18 U.S.C. § 371 - Conspiracy to Make a Materially False and Misleading Statement to an Accountant

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:
- a five (5) year prison term (18 U.S.C. § 371);
- a $250,000 fine (18 U.S.C. § 3571(b)(4);
- a three (3) year term of supervised release (18 U.S.C. § 3583(b)(2)); and
- a $100 special assessment (18 U.S.C. § 3013(a)(2)(A)).

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

FILED

2014 OCT 30  A 11: 26

DEFENDANT - U.S.

▶ CRAIG S. ON

DISTRICT COURT NUMBER

CR  14  544

WHA

---

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

FDIC-OIG

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form  MELINDA HAAG

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)  Adam A. Reeves

### DEFENDANT

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction  ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  If "Yes" give date filed
☐ No

DATE OF ARREST ▶  Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶  Month/Day/Year

☐ This report amends AO 257 previously submitted

---

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT

Bail Amount:

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:  Before Judge:

Comments: No process is required at this time. The government and the defendant will schedule an arraignment date.

MELINDA HAAG (CABN 132612)
United States Attorney

FILED

2014 OCT 30  A 11: 26

*RICHARD W. WIEKING*
*CLERK*
*NORTHERN DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

WHA

UNITED STATES OF AMERICA,

Plaintiff,

v.

CRAIG S. ON,

Defendant.

Case No. CR **CR 14 544**

VIOLATION:  18 U.S.C. § 371 – Conspiracy to
Make a Materially False and Misleading Statement to
an Accountant; 18 U.S.C. § 981(a)(1)(C) and 28
U.S.C. § 2461 - Forfeiture of Fraud Proceeds

I N F O R M A T I O N

The United States Attorney charges:

I.    Background

At all relevant times:

A.    The Bank

1.    United Commercial Bank (UCB) was a commercial bank headquartered in San Francisco, California, with branch offices throughout the United States as well as in China and Taiwan.  UCB provided a full range of commercial and consumer banking products to businesses and individuals.

2.    UCBH Holdings, Inc. (UCBH), a Delaware corporation, was the holding company for UCB.  UCBH was a publicly-traded company whose shares were registered with the United States Securities and Exchange Commission (SEC) and were traded on the National Association of Securities Dealers Automatic Quotation (NASDAQ) system under the symbol "UCBH."  Hereafter, UCBH and

1   UCB are referred to collectively as "the Bank."

2       3.   As a public company, the Bank was required to comply with the SEC's rules and
3   regulations, which were designed to protect the investing public. Under those rules and regulations, the
4   Bank was required to (a) make and keep books, records, and accounts, which, in reasonable detail,
5   accurately and fairly reflected the transactions and disposition of the assets of the Bank; (b) devise and
6   maintain a system of internal accounting controls sufficient to provide reasonable assurances that the
7   Bank's transactions were recorded as necessary to permit preparation of financial statements in
8   conformity with Generally Accepted Accounting Principles (GAAP); and (c) file annual reports with the
9   SEC that contained audited financial statements that accurately and fairly presented the financial
10  condition of the Bank, as well as other reports that contained information about the Bank's management,
11  board of directors, business operations, and performance.

12      4.   KPMG, LLP, a public accounting firm, acted as the independent auditor of the Bank's
13  annual financial statements and reviewed the financial statements it filed quarterly.

14      5.   The Bank was regulated by, among other agencies, the Federal Deposit Insurance
15  Corporation (FDIC). The FDIC required, among other things, that the Bank be adequately capitalized
16  and safely managed at all times. The FDIC required that the Bank file quarterly financial statements
17  with the FDIC known as "call reports."

18      B.   The Defendant

19      6.   Defendant, CRAIG S. ON, was a resident of Berkeley, California. From approximately
20  October 2008 through November 2009, ON served as the Bank's Chief Financial Officer.

21      C.   The Bank's Loan Loss Allowance

22      8.   The Bank's business loans were booked as assets on the quarterly and annual financial
23  statements filed with the SEC. Interest accrued on business loans was booked as revenue on those
24  quarterly and annual financial statements.

25      9.   The Bank assigned risk ratings to its loans. Each rating represented the current
26  likelihood, based on all available information, that the borrower would pay the amount due under the
27  borrower's loan agreement with the Bank. Changes in risk ratings were reflected in internal records
28  specifically prepared for that purpose.

10.     The Bank deemed a loan to be "impaired" if, based on all current information, it was probable that the Bank would be unable to collect all of the amounts due under the loan agreement. On a quarterly basis, the Bank represented to its regulators, its auditor, and the investing public, that the Bank had estimated the total dollar amount of outstanding loans that the Bank would probably not collect from borrowers. This estimate, identified on the Bank's quarterly and annual financial statements as the "Allowance for Loan Losses" (hereafter, the "Loan Loss Allowance"), was derived from, among other things, the Bank's risk ratings as well as the value of the collateral securing the Bank's loans.

11.     By decreasing the Loan Loss Allowance, the Bank increased net assets on the balance sheet and increased net income on the income statement. For this reason, the size of the Bank's Loan Loss Allowance was material to stock analysts and the investing public. The Bank's Loan Loss Allowance was also material to bank regulators such as the FDIC, which monitored the Bank's Loan Loss Allowance and total assets to ensure that the Bank was adequately capitalized.

D.      The Bank's Expanding Loan Portfolio

12.     Between 2004 and 2007, the Bank's loan portfolio increased from approximately $4.4 billion to more than $8 billion. By September 2008, the Bank's loan portfolio faced growing losses.

13.     On or about October 3, 2008, Congress created the Troubled Asset Relief Program (TARP), as part of the Emergency Economic Stabilization Act of 2008.

14.     On or about November 14, 2008, the United States provided approximately $297 million in TARP funds to the Bank.

II.     The Conspiracy

A.      Objectives of the Conspiracy

15.     Beginning in or about 2009, ON, together with others, engaged in conspiracy to deceive the Bank's auditor by manipulating the Bank's books and records in a manner that, as ON well knew, (a) misrepresented and concealed the Bank's true financial condition and performance by falsifying the books and records so they did not fairly and accurately reflect, in all material respects, the transactions and dispositions of the assets of the Bank, and omitted facts necessary to make the books and records complete and accurate; and (b) caused the Bank to issue false and misleading statements and representations about its financial condition and performance, because such statements did not fairly and

1  accurately, in all material respects, reflect the Bank's actual financial condition and performance, and
2  omitted facts necessary to make those statements complete and accurate.

3      16.    The objectives of the conspiracy were, among other things, to (a) conceal, delay, and
4  avoid publicly reporting the number, and financial magnitude, of the Bank's impaired loans; (b) conceal,
5  delay, and avoid publicly reporting the Bank's true loan losses; and (c) mislead the Bank's auditors
6  about the Bank's financial condition and performance.

7      B.    Manner and Means of the Conspiracy

8      17.    In furtherance of the conspiracy, ON, and others, caused the Bank to fraudulently conceal
9  information showing the Bank's loan collateral and repossessed assets had declined in value.

10      18.    As a further part of the conspiracy, ON, and others, falsified the Bank's books and
11  records. Among other things, ON, and others, prepared and caused to be prepared financial statements
12  that both falsely described, and omitted material information necessary to accurately describe, the
13  likelihood that loans would be repaid pursuant to the Bank's loan agreements and the value of the Bank's
14  loan collateral and repossessed assets. As a consequence, the description of the Bank's loans and
15  repossessed assets presented in those financial statements was false, misleading, and fraudulent.

16      19.    As a further part of the conspiracy, ON, and others, misled and lied to the Bank's
17  accountant, to wit, KPMG, LLP. ON, and others, also failed to disclose to the Bank's accountant facts
18  necessary to make their statements and representations complete and accurate. For example, ON, and
19  others, concealed and omitted from the Bank's records material information relating to the Bank's
20  intention to sell various loans, as well as pending loan sales.

21      20.    As a further part of the conspiracy, ON, and others, caused the Bank to issue materially
22  false and misleading public statements and reports regarding its financial condition and performance in,
23  among other things, an SEC Form 10-K filed with the SEC on or about March 16, 2009.

24      21.    On or about May 20, 2009, the Bank announced that the financial statements contained in
25  its March 16, 2009 SEC Form 10-K were unreliable, withdrew those financial statements, and
26  announced that it intended to restate them.

27  //

28  //

INFORMATION                                    4

COUNT ONE:  (18 U.S.C. § 371 – Conspiracy to Make a Materially False and Misleading Statement to an Accountant)

22.     Paragraphs 1 through 21 of this Information are re-alleged and incorporated as if fully set forth here.

23.     In or about 2009, in the Northern District of California and elsewhere, the defendant,

CRAIG S. ON,

and others, unlawfully, willfully, and knowingly, did conspire to commit an offense against the United States, namely, make a materially false and misleading statement to an accountant, in violation of Title 15, United States Code, Section 78ff, and Title 17, Code of Federal Regulations, Section 240.13b2-2.

24.     In furtherance of the conspiracy, and to effect the illegal object thereof, ON committed, or caused to be committed, the following overt acts, among others, in the Northern District of California and elsewhere:

(a)     ON sent a materially false and misleading email to a representative of KPMG, LLP, on or about March 15, 2009;

(b)     ON, and others, sent a materially false and misleading management representation letter to KPMG, LLP, on or about March 16, 2009; and

(c)     ON, and others, filed, or caused to be filed, an SEC Form 10-K with the Securities and Exchange Commission on or about March 16, 2009 that fraudulently under-reported the Bank's loan loss allowance in a material amount.

All in violation of Title 18, United States Code, Section 371.

FORFEITURE ALLEGATION:  (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461)

25.     Paragraphs 1 through 24 this Information are re-alleged and incorporated as if fully set forth here for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C).

26.     Upon a conviction for the offense alleged in Count One, the defendant,

CRAIG S. ON,

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to said offense, including but not limited to a sum of money equal to the total proceeds from the commission of said offense.

INFORMATION                                    5

27.   If, as a result of any act or omission of the defendant, any of said property

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to or deposited with, a third person;

(c)   has been placed beyond the jurisdiction of the Court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

any and all interest defendant has in any other property up to the value of the property described in Paragraph 26, shall be forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461.

All in violation of Title 18, United States Code, Sections 981(a)(1)(C), 1348, 1349; Title 28, United States Code, Section 2461; and Rule 32.2 of the Federal Rules of Criminal Procedure.

Dated: October 30, 2014                                          MELINDA HAAG
                                                                United States Attorney



                                                                /s/ Douglas Wilson
                                                                DOUGLAS WILSON
                                                                Chief, Criminal Division

Approved as to form:


ADAM A. REEVES
ROBERT DAVID REES
Assistant United States Attorneys