MELINDA HAAG (CABN 132612)
United States Attorney



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 11 0664 |
| Plaintiff, | |
| v. | VIOLATIONS: 18 U.S.C. § 1349 – Conspiracy to Commit Securities Fraud; 18 U.S.C. § 1348 – Securities Fraud; 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), 78ff and 17 C.F.R. § 240.13b2-1 – Falsifying Corporate Books and Records; 15 U.S.C. § 78ff and 17 C.F.R. § 240.13b2-2 – False Statements to Accountants of a Publicly Traded Company; 18 U.S.C. § 2 – Aiding and Abetting; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 – Forfeiture of Fraud Proceeds |
| EBRAHIM SHABUDIN and THOMAS YU, | |
| Defendants. | **FILED UNDER SEAL** |

///
///
///
///
///
///
///
///

INDICTMENT

# INDICTMENT

The Grand Jury charges:

## INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment, unless otherwise indicated:

I. **Background**

   A. **The Bank**

   1. United Commercial Bank (UCB) was a commercial bank headquartered in San Francisco, California, with branch offices throughout the United States as well as in China and Taiwan. UCB provided a full range of commercial and consumer banking products to businesses and individuals.

   2. UCBH Holdings, Inc. (UCBH), a Delaware corporation, was the holding company for UCB. UCBH was a publicly traded company whose shares were registered with the United States Securities and Exchange Commission (SEC) and were traded on the National Association of Securities Dealers Automatic Quotation (NASDAQ) system under the symbol "UCBH." Hereafter, UCBH and UCB are referred to collectively as "the Bank."

   3. As a public company, the Bank was required to comply with the SEC's rules and regulations, which were designed to protect the investing public. Under those rules and regulations, the Bank was required to (a) make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and disposition of the assets of the Bank; (b) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that the Bank's transactions were recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles; and (c) file annual reports with the SEC that contained audited financial statements that accurately and fairly presented the financial condition of the Bank, as well as other reports that contained information about the Bank's management, board of directors, business operations and performances.

   4. A public accounting firm acted as the independent auditor of the Bank's annual financial statements and reviewed the financial statements it filed quarterly.

INDICTMENT                                            2

5.  The Bank was regulated by, among other agencies, the Federal Deposit Insurance Corporation (the FDIC). The FDIC required, among other things, that the Bank be adequately capitalized and safely managed at all times.

B.  **The Defendants**

6.  Defendant EBRAHIM SHABUDIN was a resident of Moraga, California, and an Executive Vice President of the Bank. From approximately September 2008 through April 2009, SHABUDIN served as the Bank's Chief Credit Officer and the Chief Operating Officer.

7.  Defendant THOMAS YU was a resident of San Ramon, California, and a Senior Vice President of the Bank. From approximately June 2008 through June 2009, YU served as the Bank's Manager of Credit Risk and Portfolio Management.

C.  **The Bank's Loan Loss Allowance**

8.  The Bank's business loans were booked as assets on the quarterly and annual financial statements filed with the SEC. Interest accrued on business loans was booked as revenue on those quarterly and annual financial statements.

9.  The Bank assigned risk ratings to its loans. Each rating represented the current likelihood, based on all available information, that the borrower would pay the amount due under the borrower's loan agreement with the Bank. Changes in risk ratings were reflected in internal records specifically prepared for that purpose.

10.  The Bank deemed a loan to be "impaired" if, based on all current information, it was probable that the Bank would be unable to collect all of the amounts due under the loan agreement. On a quarterly basis, the Bank represented to its regulators, its auditor, and the investing public that the Bank had estimated the total dollar amount of outstanding loans that the Bank would probably not collect from borrowers. This estimate, identified on the Bank's quarterly and annual financial statements as the "Allowance for Loan Losses" (hereafter, the "Loan Loss Allowance"), was derived from, among other things, the Bank's risk ratings as well as the value of the collateral securing the Bank's loans.

11.  By decreasing the Loan Loss Allowance, the Bank increased net assets on the balance sheet and increased net income on the income statement. For this reason, the size of the

INDICTMENT                                             3

Bank's Loan Loss Allowance was material to stock analysts and the investing public. The Bank's Loan Loss Allowance was also material to bank regulators such as the FDIC, which monitored the Bank's Loan Loss Allowance and total assets to ensure that the Bank was adequately capitalized.

    D.    The Bank's Expanding Loan Portfolio

    12.    Between 2004 and 2007, the Bank's loan portfolio increased from approximately $4.4 billion to more than $8 billion. By September 2008, the Bank's loan portfolio faced growing losses.

    13.    On or about October 3, 2008, Congress created the Troubled Asset Relief Program (the TARP), as part of the Emergency Economic Stabilization Act of 2008.

    14.    On or about November 14, 2008, the United States provided approximately $298 million in TARP funds to the Bank.

II.    The Scheme to Defraud

    A.    Objectives of the Scheme to Defraud

    15.    Beginning in or about September 2008, SHABUDIN and YU, together with others, engaged in a fraudulent scheme to deceive the investing public, depositors, the SEC, the Bank's auditor, and bank regulators including bank examiners with the FDIC, by manipulating the Bank's books and records in a manner that, as they well knew, (a) misrepresented and concealed the Bank's true financial condition and performance by falsifying the books and records so they did not fairly and accurately reflect, in all material respects, the transactions and dispositions of the assets of the Bank, and omitted facts necessary to make the books and records complete and accurate; and (b) caused the Bank to issue false and misleading statements and representations about its financial condition and performance, because such statements did not fairly and accurately, in all material respects, reflect the Bank's actual financial condition and performance, and omitted facts necessary to make those statements complete and accurate.

    16.    The objectives of the scheme to defraud were, among other things, to (a) conceal, delay, and avoid publicly reporting the Bank's number of impaired loans; (b) conceal, delay, and avoid publicly reporting the Bank's true loan losses; (c) mislead investors through false

statements relating to information material to their decision to buy, sell, or hold the Bank's securities; (d) mislead depositors about information relevant to their decision to keep their funds at the Bank; and (e) mislead bank regulators, such as the FDIC, about whether the Bank was adequately capitalized and effectively managed.

B. <u>Manner and Means of the Scheme to Defraud</u>

17. In furtherance of the scheme to defraud, SHABUDIN and YU, and others, utilized a variety of fraudulent accounting maneuvers and techniques. Among other things, SHABUDIN and YU, and others, caused the Bank to:

(a) fraudulently conceal information showing the Bank's loan collateral and repossessed assets had declined in value;

(b) fraudulently rate the risk of certain loans; and

(c) fraudulently delay the downgrading of the risk ratings of certain loans.

18. As a further part of the scheme to defraud, SHABUDIN and YU, and others, falsified the Bank's books and records. Among other things, SHABUDIN and YU, and others, prepared and caused to be prepared various records and memoranda that both falsely described, and omitted material information necessary to accurately describe, the likelihood that loans would be repaid pursuant to the Bank's loan agreements and the value of the Bank's loan collateral and repossessed assets. As a consequence, the description of the Bank's loans and repossessed assets presented in those records and memoranda was false, misleading, and fraudulent.

19. As a further part of the scheme to defraud, SHABUDIN and YU, and others, misled and lied to the Bank's auditor. SHABUDIN and YU, and others, also failed to disclose to the Bank's auditor facts necessary to make their statements and representations complete and accurate. For example, SHABUDIN and YU, and others:

(a) misrepresented, and caused to be misrepresented, to the Bank's auditor, records and memoranda that provided a materially false, misleading, and fraudulent description of various Bank loans and the collateral securing those loans;

///

INDICTMENT 5

(b) concealed and omitted from the Bank's records material information relating to the existence of recent appraisals of collateral that secured various Bank loans;

(c) concealed and omitted from the Bank's records material information relating to the value of repossessed assets and collateral; and

(d) concealed and omitted from the Bank's records material information relating to the Bank's intention to sell various loans, as well as pending loan sales.

20. As a further part of the fraudulent scheme, SHABUDIN and YU, and others, caused the Bank to issue materially false and misleading public statements and reports regarding its financial condition and performance in, among other things:

(a) a press release issued on or about January 22, 2009;

(b) an earnings call held on or about January 23, 2009; and

(c) an annual report on SEC Form 10-K filed with the SEC on or about March 16, 2009, that contained its financial statements for the year 2008.

21. On or about May 20, 2009, the Bank announced that the financial statements contained in its March 16, 2009 SEC Form 10-K were unreliable, withdrew those financial statements, and announced that it intended to restate them.

22. The Bank failed in November 2009, without filing restated financial statements for the year 2008. As a result of the Bank's failure, the FDIC became the Bank's receiver and has paid out approximately $397 million. The estimated losses to the FDIC are approximately $2.5 billion. To date, none of the TARP funds have been repaid.

///
///
///
///
///
///
///
///

COUNT ONE: (18 U.S.C. § 1349 – Conspiracy to Commit Securities Fraud)

23. The allegations in Paragraphs 1 through 22 are realleged and incorporated as if fully set forth here.

24. Beginning in or about September 2008, and continuing through in or about April 2009, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendants,

EBRAHIM SHABUDIN and
THOMAS YU,

and others, did knowingly and intentionally attempt and conspire to execute a scheme and artifice to (a) defraud persons in connection with securities of UCBH, an issuer with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, and (b) obtain, by means of materially false and fraudulent pretenses, representations and promises, and by statements containing material omissions, money and property in connection with the purchase and sale of securities of UCBH, an issuer with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, in violation of Title 18, United States Code, Section 1348.

All in violation of Title 18, United States Code, Section 1349.

COUNT TWO: (18 U.S.C. §§ 1348, 2 – Securities Fraud)

25. The allegations in Paragraphs 1 through 24 are realleged and incorporated as if fully set forth here.

26. Beginning in or about September 2008, and continuing through in or about April 2009, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendants,

EBRAHIM SHABUDIN and
THOMAS YU,

and others, did knowingly and intentionally execute, and attempted to execute, a scheme and artifice to (a) defraud persons in connection with securities of UCBH, an issuer with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, and (b)

INDICTMENT 7

obtain, by means of materially false and fraudulent pretenses, representations and promises, and by statements containing material omissions, money and property in connection with the purchase and sale of securities of UCBH, an issuer with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, and did aid and abet in the same.

All in violation of Title 18, United States Code, Sections 1348 and 2.

<u>COUNT THREE</u>: (15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), 78ff and 17 C.F.R. 240.13b2-1; 18 U.S.C. § 2 – Falsifying Corporate Books and Records)

27. The allegations in Paragraphs 1 through 26 are realleged and incorporated as if fully set forth here.

28. Beginning in or about September 2008, and continuing through in or about April 2009, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendants,

EBRAHIM SHABUDIN and
THOMAS YU,

and others, did knowingly and willfully, directly and indirectly, falsify and cause to be falsified books, records, and accounts of UCBH, and did aid and abet in the same.

All in violation of Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(5) and 78ff; Title 17, Code of Federal Regulations, Section 240.13b2-1; and Title 18, United States Code, Section 2.

///
///
///
///
///
///
///
///
///

COUNT FOUR: (15 U.S.C. § 78ff and 17 C.F.R. § 13b2-2; 18 U.S.C. § 2 – False Statements to Accountants of a Publicly Traded Company)

29. The allegations in Paragraphs 1 through 28 are realleged and incorporated as if fully set forth here.

30. Beginning in or about September 2008, and continuing through in or about April 2009, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendants,

EBRAHIM SHABUDIN and
THOMAS YU,

and others, did knowingly and willfully make and cause to be made materially false and misleading statements to UCBH's auditors in connection with the audit, review, and examination of UCBH's financial statements, and in connection with the preparation of documents and reports required to be filed with the SEC, and did knowingly and willfully omit to state material facts necessary in order to make statements made, in light of the circumstances in which such statements were made, not misleading, and did aid and abet in the same.

All in violation of Title 15, United States Code, Section 78ff; Title 17, Code of Federal Regulations, Section 240.13b2-2; and Title 18, United States Code, Section 2.

FORFEITURE ALLEGATION: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461)

31. Paragraphs 1 through 26 of this Indictment are re-alleged and incorporated as if fully set forth here for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C).

32. Upon a conviction for any violations of Title 18, United States Code, Sections 1349 and 1348, as alleged in Counts One and Two, the defendants,

EBRAHIM SHABUDIN and
THOMAS YU,

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to said offense, including but not limited to a sum of money equal to the total proceeds from the commission of said offense.

INDICTMENT 9

33. If, as a result of any act or omission of the defendants, any of said property
    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to or deposited with, a third person;
    c. has been placed beyond the jurisdiction of the Court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty;

any and all interest defendants have in any other property up to the value of the property described in Paragraph 32 above, shall be forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461.

All in violation of Title 18, United States Code, Sections 981(a)(1)(C), 1348, 1349; Title 28, United States Code, Section 2461; and Rule 32.2 of the Federal Rules of Criminal Procedure.

Dated: September 15, 2011

A TRUE BILL.

FOREPERSON

MELINDA HAAG
United States Attorney

J. DOUGLAS WILSON
Acting Chief, Criminal Division

(Approved as to form: _____ )
AUSA JEFFREY RABKIN

10